IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                                          No.  05-40081-01-SAC

JUAN CARLOS RUBIO-SANCHEZ,
    a/k/a Daniel Castro-Osuna,

           Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's pretrial motion to suppress evidence found in the search of the vehicle he was driving on May 1, 2005. (Dk. 20). The government has filed a response opposing the motion. (Dk. 21). The parties presented evidence and oral argument in support of their positions on December 7, 2005. With leave of the court, the defendant supplemented his motion with another memorandum, (Dk. 26), to which the government filed a responsive memorandum (Dk. 27). Having reviewed all matters submitted and having researched the relevant law, the court is ready to rule on the motion.

INDICTMENT

The defendant Juan Carlos Rubio-Sanchez is charged in a two-count

indictment charging that on May 31, 2005, in violation of 21 U.S.C. § 841(a)(1), he possessed with the intent to distribute more than 500 grams of a methamphetamine mixture and possessed with the intent to distribute more than one kilogram of heroin.

FACTS

On May 31, 2005, Sergeant Kelly Schneider with the Russell County Sheriff's Department was patrolling Interstate 70 highway in Russell County, Kansas. Standing alongside the road after completing a traffic stop, Sergeant Schneider's attention was drawn to a passing tan Chevrolet truck with a white piece of paper posted in the license plate area. Sergeant Schneider boarded his patrol car and caught up with the tan truck. From behind, he could not read all of the information found on the posted paper tag, so the Sergeant pulled up beside the truck, but he still could not read all of the numbers because the truck's ball hitch blocked his view of the middle numbers on the tag. Around 2:20 p.m. the Sergeant activated his emergency lights and pulled over the tan truck for a violation of K.S.A. 8-133, not having a license plate that was clearly visible. Even after stopping fifteen to twenty feet behind the pickup, Sergeant Schneider still could not read all the numbers on posted temporary tag because the ball hitch blocked his view.

Upon activating his emergency lights, Sgt. Schneider's mounted video camera began recording. The recorded video shows the ball hitch mounted on the truck's bumper impeded the view of several numbers on the temporary tag. The balance of the traffic stop is captured on this video recording.

Sergeant Schneider exits his patrol car and walks toward the truck's passenger door. He pauses at the rear of the truck and appears to read the temporary tag. Sergeant Schneider proceeds to the passenger side window and greets the male driver and female passenger before explaining that he stopped them as he could not read the small registration on the back of the truck. He asks for the defendant's driver's license[1] and inquires about their travel plans. The driver says they are driving to Kansas City to visit family and expect to stay about one week.

The Sergeant requests to see the registration[2] for the truck. The defendant driver hands over a three-day temporary permit issued by the State of

---

[1] Sergeant Schneider testified that the defendant produced a driver's license issued in Sonara, Mexico, that identified him as Daniel Castro-Osuna. After the defendant's arrest, the Sergeant learned from other law enforcement officers that the defendant's name was Juan Carlos Rubio-Sanchez.

[2] Sergeant Schneider testified that the defendant's hands were shaking so badly that he struggled to open the glove box and retrieve the papers in response to the request for the vehicle's registration. The defendant handed the Sergeant a three-day temporary permit that the State of Arizona had issued to a person named Leticia Garcia.

Arizona.  Schneider looks over the permit and then asks the driver if he owns the truck, and the driver answers affirmatively.  The Sergeant inquires why the defendant's name doesn't appear on the permit.  Acknowledging that his name is absent from the permit, the driver says he just bought the truck.  The Sergeant asks whose name appears on the permit.  The driver and the passenger converse in Spanish and then indicate that the passenger owns the truck.  Schneider asks for the passenger's identification[3] and then asks who is "Leticia," which is the person's name appearing on the permit.  The passenger indicates that Leticia is her friend who lives in Phoenix.  Before going back to his patrol car, Sergeant Schneider tells the defendant that he needs to check the defendant's documents.[4]

        Sergeant Schneider later returns to the truck and asks if they have any additional documentation concerning ownership of the truck.  The defendant answers that he doesn't, and Schneider explains the document is only a three-day permit and expresses surprise that the defendant has no other written proof of

---

[3]The passenger's name on the provided identification was Diana Andrea Alarcon-Cerda.

[4]Though it was his practice to verify a driver's license and vehicle registration, Sergeant Schneider testified that he did not contact dispatch as he knew from experience that information on a Mexican driver's license was unavailable.  As for checking on the registration, the defendant had provided only a three-day permit which appeared to match the paper posted on the back of the truck.

ownership. After asking about the absence of clothes for their trip and receiving no response, Sergeant Schneider admonishes them to "be careful" and "have a safe trip." He then moves away from the truck and takes two steps toward his patrol car. The video shows him stopping, turning around, leaning toward the passenger's window, and asking whether they "would mind if he asked another question." Receiving the defendant's consent, Schneider says he sees "a lot of illegal contraband on this road" and explains "contraband" with the examples of cocaine, marijuana, and pistols. He then asks if they have contraband. When the defendant answers "no," Sergeant Schneider queries, "Mind if I take a look in your truck?" Though answering affirmatively, the defendant's voice and actions clearly demonstrate his consent to the Sergeant's request. Following Schneider's suggestions, the defendant and the passenger step out of the truck with a jacket and blanket and wait outside as the search occurs.

Several minutes into the search, Sergeant Schneider questions the defendant whether the gas tank had been recently removed, as it has some scratches. Sergeant Schneider then requests that they step back farther, as he wants to search the pickup with his drug-detection dog. The video shows the Sergeant lead his dog around the pickup twice. Sergeant Schneider testified that his trained and certified drug-detection canine alerted to the passenger side particularly

5

the second time around the truck.  Based on the canine alert, Sergeant Schneider directs the defendant to follow him and drive the truck to the Sheriff's Department in Russell.

Sergeant Schneider testified that in Russell he searched the fuel tank with a fiber optic scope and found nothing.  He then examined the engine compartment and observed that the radiator bolts appeared new and freshly painted and that four unusual wires were attached to the radiator.  He shined a flashlight through the radiator and observed that the light was blocked at the radiator's midpoint.  With this indication of a secret compartment, Sergeant Schneider removed the radiator finding four packages of methamphetamine and four packages of heroin concealed in the bottom half of the radiator.

LAWFULNESS OF STOP

The defendant's original motion and memorandum first challenges that the initial stop was unlawful as the trooper observed no traffic violation and lacked reasonable suspicion or probable cause to conduct a traffic stop.  Specifically, the defendant contends the temporary registration was clearly visible, and the officer had no basis for believing a traffic violation had occurred.  In his supplemental motion and memorandum, the defendant adds the novel argument that a finding of reasonable suspicion here would implicate his constitutional right to travel and that

"[t]o avoid this constitutionally suspect approach, this Court should hold that a temporary license tag validly issued by another state and placed in the correct spot does not, as a matter of law, violate K.S.A. 8-133." (Dk. 26, p. 3).

A traffic stop is a seizure under the Fourth Amendment. *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003). Akin to investigative detentions, routine traffic stops are analyzed under the investigative detention principles outlined in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The reasonableness of a stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's action "was reasonably related in scope to the circumstances that first justified the interference." *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir. 1998) (quotation omitted).

In deciding the validity of the initial stop, the court looks at whether it was "objectively justified." *United States v. Botero-Ospina*, 71 F.3d 783, 788 (10th Cir. 1995) (en banc), *cert. denied*, 518 U.S. 1007 (1996). To be valid, the officer must have either "'(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th

Cir. 2001) (quoting *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999)).  The constitutional reasonableness of a traffic stop does not depend on the officer's actual motive in conducting the stop.  *Whren v. United States*, 517 U.S. 806, 812-13 (1996).  In short, the initial traffic stop is reasonable if the officer observed a traffic violation or has reasonable articulable suspicion that a traffic or equipment violation occurred.  *United States v. Nichols*, 374 F.3d 959, 964 (10th Cir. 2004), *cert. granted and vacated*, 125 S. Ct. 1082 (U.S. 2005), *opinion affirming conviction reinstated*, 410 F.3d 1186 (10th Cir. 2005).

The Tenth Circuit recently summarized the law relevant to the reasonable suspicion standard to be applied in the context of traffic stops:

> Reasonable suspicion requires that an officer provide "some minimal level of objective justification." *I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984).  However, an officer with reasonable suspicion need not "rule out the possibility of innocent conduct" as long as the totality of the circumstances suffices to form "a particularized and objective basis" for a traffic stop. *United States v. Arvizu*, 534 U.S. 266, 277-78, 122 S.Ct. 744, 151 L. Ed. 2d 740 (2002) (citation omitted).  Moreover, reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error. *See United States v. Walraven*, 892 F.2d 972, 974-75 (10th Cir. 1989) (quotation omitted).  Finally, reasonable suspicion may rely on information less reliable than that required to show probable cause, *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), and it need not be correct. *See United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) (upholding a traffic stop based on a reasonable articulable suspicion that a cracked windshield substantially obstructed the driver's view--the standard required by statute-- regardless of whether or not the crack actually

constituted a violation of the law); *United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999) (upholding a traffic stop based on the mistaken, yet reasonable, belief that defendant had illegal headlights).

*United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).

Temporary tags on vehicles traveling in Kansas must comply with K.S.A. 8-133[5]. *United States v. Edgerton*, 2004 WL 2413553 at *8 (D. Kan. 2004) A tag is "clearly legible" on a moving car if it is capable of being read by an officer in a car immediately following a safe distance behind. *United States v. Granados-Orozco*, 2003 WL 22213129 (D. Kan. Aug. 26, 2003); *see State v. Hayes*, 8 Kan. App. 2d 531, 660 P.2d 1387, 1389 (1983) (The statutory requirement for displaying a legible license plate is for the purpose of permitting officers to conduct routine license plate checks). "Officers should not be required to stop vehicles in order to read their tags." *Granados-Orozco*, 2003 WL 22213129 at *2. The video recording confirms the testimony of Sergeant Schneider that the ball hitch on the truck blocked several numbers on the Arizona temporary tag. Sergeant Schneider

---

[5]In pertinent part, K.S.A. 8-133 requires:
"Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible."

had reasonable suspicion to conduct this traffic stop based on the violation of K.S.A. 8-133.

The defendant supplemented his motion to suppress with the argument that a finding of reasonable suspicion here would mean that all Arizona temporary tags violate Kansas law and that this result would implicate the constitutional right to interstate travel by criminalizing temporary tags validly issued by another state. Citing the doctrine of constitutional avoidance, the defendant proposes the court avoid this constitutional issue by interpreting K.S.A. 8-133 to not reach license plates or tags validly issued by another state.

The defendant lacks the factual premise here for making this argument. This is not a case that requires deciding whether K.S.A. 8-133 is violated based solely on the size of a license plate or temporary tag officially issued by another state. The Arizona temporary tag here was posted behind a ball hitch that blocked several numbers from view. There is nothing in Kansas law, nor does the defendant cite any Arizona law, that permits a vehicle operator to obscure the display of a license plate or tag by affixing a ball hitch. This court has held that "[a] tag is not positioned to be plainly visible when it is behind a ball hitch that blocks an officer from reading the entire plate while following at a reasonably safe distance." *United States v. Unrau*, 2003 WL 21667166, at *3 (D. Kan. Jun. 16,

2003). On these facts, the court declines to address the defendant's constitutional challenge.

SEARCH EXCEEDING SCOPE OF CONSENT

The defendant's written motion advances only one other argument for suppression, that is, Sergeant Schneider in dismantling the pickup through the removal of the radiator exceeded the reasonable scope of the consent to search provided by the defendant. The defendant denies that in giving his initial consent he envisioned the Sergeant removing the radiator from his pickup and further denies giving any further express consent to this intrusive search. At the hearing, the defendant orally included a challenge to whether Sergeant Schneider had probable cause to conduct this search in the absence of consent.

As the government points out, Sergeant Schneider was not relying on the defendant's consent when he removed the radiator but rather had probable cause to search the pickup at that point. The probable cause was provided by the positive alert from his drug-detection canine. The law is well-settled in this circuit that a canine alert provides probable cause to search a vehicle. *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005); *United States v. Rosborough*, 366 F.3d 1145, 1152-53 (10th Cir. 2004) (holding "a canine alert toward the passenger area of a vehicle gives rise to probable cause to search the trunk as well"). "Once

probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005) (citations omitted). Sergeant Schneider testified that it is not surprising for a drug-detection dog to alert towards one area of the vehicle and for the drugs to be found in a different area of vehicle. Schneider explained that air movement obviously affects the location and concentration of a controlled substance's odor. The canine alert gave the Sergeant probable cause to search the entire vehicle, to open the engine hood, and to check those areas where drugs could be concealed. Upon observing the suspicious condition of the radiator and finding probable cause of a secret compartment based on his training and experience, Sergeant Schneider lawfully removed the radiator.

IT IS THEREFORE ORDERED that the defendant's pretrial motion to suppress evidence found in the search of the vehicle he was driving on May 1, 2005, (Dk. 20) is denied.

Dated this 8th day of February, 2006, Topeka, Kansas.

s/ Sam A. Crow  
Sam A. Crow, U.S. District Senior Judge