IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                          No.  05-40081-01-SAC

JUAN CARLOS RUBIO-SANCHEZ,
    a/k/a Daniel Castro-Osuna,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's motion asking the court to reconsider its prior order denying his motion to suppress in light of the Tenth Circuit's recent published opinion of *United States v. Edgerton*, 438 F.3d 1043 (10th Cir. 2006).  (Dk. 34).  Believing his motion raises only a question of law that can be resolved on the current record, the defendant does not request a hearing in order to present new evidence or additional oral argument.  The government's response opposes the defendant's motion but agrees that the court may decide the motion on the record as it stands.  (Dk. 35).  After considering the filings, reviewing the record and researching the relevant law, the court is ready to rule.

**BACKGROUND**

The defendant was driving a truck on Interstate 70 when stopped for a

traffic violation.  During a consensual search, methamphetamine and heroin were found concealed in the bottom half of the truck's radiator.  The defendant moved to suppress this evidence arguing that the traffic stop for a tag violation was unlawful and that the search exceeded the scope of his consent.  On the first point, the defendant argued Sergeant Schneider lacked reasonable suspicion that the Arizona temporary registration plate displayed on the rear of the truck violated K.S.A. § 8-133.  Alternatively, the defendant asked the court to find that K.S.A. § 8-133 could not be constitutionally enforced against vehicles traveling through Kansas bearing temporary tags validly issued by another state.

The court denied the defendant's motion to suppress.  (Dk. 28).  The court held that the "[t]emporary tags on vehicles traveling in Kansas must comply with K.S.A. § 8-133" which requires the tags "to be clearly visible" and "clearly legible."  (Dk. 28, p. 9).  "A tag is 'clearly legible' on a moving car if it is capable of being read by an officer in a car immediately following a safe distance behind. *United States v. Granados-Orozco*, 2003 WL 22213129 (D. Kan. Aug. 26, 2003); *see State v. Hayes*, 8 Kan. App. 2d 531, 660 P.2d 1387, 1389 (1983) (The statutory requirement for displaying a legible license plate is for the purpose of permitting officers to conduct routine license plate checks)."  *Id*.  The court found that as testified to by Sergeant Scheider and confirmed by the video recording the ball

2

hitch on the defendant's truck blocked several numbers on the temporary tag from

view.  *Id.* at 9-10.  "There is nothing in Kansas law, nor does the defendant cite any

Arizona law, that permits a vehicle operator to obscure the display of a license plate

or tag by affixing a ball hitch."  *Id*. at 10.  Finally, the court pointed to its prior

holding on this same issue:  "[a] tag is not positioned to be plainly visible when it is

behind a ball hitch that blocks an officer from reading the entire plate while

following at a reasonably safe distance.  *United States v. Unrau*, 2003 WL

21667166, at *3 (D. Kan. Jun. 16, 2003)."  *Id*. at 10-11.

## STANDARD GOVERNING MOTION TO RECONSIDER

This court articulated this standard in *United States v. D'Armond*, 80

F. Supp. 2d 1157 (D. Kan. 1999), as follows:

> Rarely do parties in criminal proceedings file motions to reconsider rulings
> on pretrial motions.  This court believes that the standards for evaluating a
> motion to reconsider in the civil context are relevant for evaluating a motion
> to reconsider in a criminal case.  "A motion to reconsider shall be based on
> (1) an intervening change in controlling law, (2) availability of new evidence,
> or (3) the need to correct clear error or prevent manifest injustice." D.Kan.
> Rule 7.3.  "A motion to reconsider is not a second chance for the losing
> party to make its strongest case or to dress up arguments that previously
> failed."  *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D.
> Kan.), *aff'd*, 43 F.3d 1484, 1994 WL 708220 (10th Cir. Dec. 21, 1994)
> (Table).
>     A court's rulings "are not intended as first drafts, subject to revision
> and reconsideration at a litigant's pleasure."  *Quaker Alloy Casting v. Gulfco
> Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).  A motion to
> reconsider is appropriate if the court has obviously misapprehended a party's

> position, the facts, or applicable law, or if the party produces new evidence
> that could not have been obtained through the exercise of due diligence.
> *Comeau v. Rupp*, 810 F. Supp. 1172, 1175 (D. Kan. 1992); *see*
> *Refrigeration Sales Co. Inc. v. Mitchell-Jackson, Inc.*, 605 F. Supp. 6, 7
> (N.D. Ill. 1983), *aff'd*, 770 F.2d 98 (7th Cir. 1985).  A motion to reconsider
> is not appropriate if the movant only wants the court to revisit issues already
> addressed or to hear new arguments or supporting facts that could have been
> presented originally.  *Comeau v. Rupp*, 810 F.Supp. at 1175. *Koch v. Koch*
> *Industries, Inc.*, 6 F. Supp. 2d 1207, 1209 (D. Kan. 1998).  The decision
> whether to grant or deny a motion to reconsider is committed to the court's
> sound discretion.  *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395
> (10th Cir. 1988).

*United States v. D'Armond*, 80 F.Supp.2d at 1170-1171; *see also United States v.*

*Price*, 2004 WL 2457858, at *2 (D. Kan. 2004).  The defendant distinguishes his

motion to reconsider from a post-hoc rehashing of arguments as he advocates the

Tenth Circuit in *United States v. Edgerton*, 438 F.3d 1043 (10th Cir. Feb. 22,

2006), changed the law regarding traffic stops pursuant to K.S.A. § 8-133 after the

district court had denied his motion to suppress.  The defendant reads *Edgerton* as

holding that even though a temporary tag is not "clearly legible" to an officer

following from at a reasonably safe distance, there is no violation of K.S.A. 8-133 if

the illegibility "was not due to any material within Defendant's ability to control, but

due to external conditions."  438 F.3d at 1050.

   This court concurs with the defendant that the Tenth Circuit in

*Edgerton* "added a judicial gloss to the plain language of § 8-133" which was not

addressed in the district court's earlier order. (Dk. 34, p. 2).  The court welcomes

this opportunity to address *Edgerton's* holding and its applicability to this case.

Being the district court to have issued the rulings on appeal in *Edgerton*, it is

familiar with the evidence and holdings leading to that appeal.

## UNITED STATES v. EDGERTON

The court understands and respects its duty to accord this decision

the full weight and measure entitled every opinion from a Tenth Circuit panel.

Apart from that, the court also understands its authority and obligation to construe

and apply panel precedent consistent with the reasoning and authorities given in a

decision and in consonance with other controlling precedent of this Circuit as well

as the Supreme Court.  It is for these reasons that the court addresses *Edgerton*,

namely, the defendant's effort to extend the holding in *Edgerton* to the facts of his

case and the court's duty to construe and apply that holding correctly.

A state trooper stopped a car being driven by Yolanda Edgerton

because the trooper could not determine whether the car had a temporary tag and

because he could not read what was posted in the rear window.  438 F.3d at 1047-

48.  The trooper could not "identify and read the temporary registration tag" posted

in the rear window until "he approached the Defendant's vehicle on foot and shined

his flashlight on the tag."  438 F.3d at 1048.  Unable to ascertain the identity of the

posted document, the trooper had objectively reasonable suspicion that the "Defendant was violating Kansas law pertaining to the display of license plates, specifically" K.S.A. § 8-133.  438 F.3d at 1048.

From the analysis and conclusion that the trooper had reasonable suspicion to stop Edgerton's car, the opinion turns to the defendant's claim that the trooper "unlawfully extended the duration of the stop (and her detention) beyond its limited scope once he identified the posting in the rear window of Defendant's vehicle as a valid Colorado temporary registration tag." *Id.*  The opinion summarizes the defendant's reliance on *United States v. McSwain*, 29 F.3d 558, 561-62 (10th Cir. 1994), and the holding in that decision.  The government argued that *McSwain* was distinguishable because the trooper in *Edgerton* continued to have reasonable suspicion that the temporary registration violated K.S.A. § 8-133 giving him a basis for extending the stop to issue a ticket. "The Government's purported distinction of *McSwain* thus hinges on its legal argument that the temporary registration display in this case violated Kan. Stat. Ann. § 8-133.  We do not agree."  438 F.3d. at 1049.

The opinion identifies the first question to be whether Kansas law or Colorado law "governs the vehicle registration tag's manner of display." *Id.*  The panel concludes this question need not be answered, "because the Colorado statute

6

governing the display of license plates is virtually identical to its Kansas

counterpart.  Both thus require license plates to be 'in a place and position to be

clearly visible.'  *See* Kan. Stat. Ann. § 8-133; Colo. Rev. Stat. § 42-3-202(2)(a)."

*Id*.

Overlooking[1] any further analysis or consideration of the plain

language of K.S.A. § 8-133,[2] the Kansas appellate court decision regarding K.S.A.

---

[1]In *United States v. DeGasso*, 369 F.3d 1139, 1145-46 (10th Cir. 2004), a
federal court's goal and responsibility in interpreting state law is laid out:

> "It is axiomatic that state courts are the final arbiters of state law. . . .  Where
> no controlling state decision exists, the federal court must attempt to predict
> what the state's highest court would do. . . .  If the state supreme court has
> not interpreted a provision, the federal court must predict how the court
> would interpret the code in light of state appellate court opinions, decisions
> from other jurisdictions, statutes, and treatises. . . .  In doing so, we are
> bound to follow rules of statutory construction of criminal statutes embraced
> by the Oklahoma judiciary . . . ."

(internal quotations and citations omitted).

[2]In construing statutes, Kansas courts look first to the plain language of the
statute, give words their ordinary meaning but with any reasonable doubt over a
meaning decided in favor of the criminal defendant, avoid unreasonable results, and
settle on reasonable and sensible interpretations that further the legislative design
and intent.  *United States v. Irby*, 2006 WL 83099, at *3 (D. Kan. 2006) (citations
omitted).  Provisions that are *in pari materia* are "construed together with a view
of reconciling and bringing them into workable harmony and giving effect to" the
whole statutory scheme if reasonably possible.  *State v. Lawson*, 261 Kan. 964,
966, 933 P.2d 684 (1997).  "When a statute is plain and unambiguous, the appellate
courts will not speculate as to the legislative intent behind it and will not read such a
statute so as to add something not readily found in the statute."  *Id*. (citation
omitted).

There is no ambiguity in K.S.A. § 8-133's requirement that "[e]very license

§ 8-133,[3] and related Kansas statutes,[4] the opinion hurriedly embraces the

---

plate shall at all times be securely fastened . . . in a place and position to be clearly visible, and shall be maintained . . . in a condition to be clearly legible."  "[A]t all times" is the only relevant temporal reference found in K.S.A. § 8-133, and this noun phrase is not reasonably susceptible to an interpretation of only during hours of daylight.

The common definition of "visible" is "capable of being seen," "legible" is commonly defined as "capable of being read or deciphered," and "clearly" ordinarily means "plain" "easily" or "free from doubt. *United States v. Carter*, 2003 WL 22077684 (D. Kan. Aug. 1, 2003) (citing WEBSTER'S NEW COLLEGIATE DICTIONARY 1308, 656, and 207 (7th ed. 1975)).  If not in a place or position easily capable of being seen for what it is, a license plate is not "clearly visible."  If not in a condition easily capable of being read, a license plate is not "clearly legible."  Though the statute does not specifically identify the vantage point or distance from which a license plate must be clearly visible and legible, a Kansas appellate court decision does offer some guidance towards a common-sense reading.  *See infra* note 3.

[3]In *State v. Hayes,* 8 Kan. App. 2d 531, 660 P.2d 1387 (1983), a municipal police officer was following a vehicle and wanted to run a license plate check on the subject vehicle.  His efforts were frustrated because he could not read the state designation on the plate.  The officer stopped the car for a traffic violation and proceeded to request the driver's license.  When the driver opened her purse, the officer observed marijuana inside the driver's purse.  The appellate court interpreted and applied K.S.A. 8-133 elucidating the purpose to this statute:

"The purpose of requiring display of a tag in the first place, and legibility of the tag displayed, is demonstrated by the very occurrence here.  The obscured tag frustrated the officers in a routine license check.  Law enforcement officers frequently must determine from tag numbers whether a vehicle is stolen; whether it is properly registered; or whether its occupant is suspected of a crime, is the subject of a warrant, or is thought to be armed.  Out-of-state cars on Kansas highways are subject to the same police imperative as local vehicles.

We conclude that the display of an illegible or obscured vehicle tag is a violation of K.S.A. 8-133 even if the vehicle is duly licensed in another state."

8 Kan. App. 2d at 533.  The Kansas Court of Appeals in *Hayes* recognizes that law enforcement officers may have any number of legitimate reasons for running a license plate check on a moving vehicle, and this important public function is "frustrated" if the officer cannot read the license plate from his moving patrol car. Consistent with *Hayes* and the obvious statutory purpose behind K.S.A. § 8-133, this court has held:

> "Although the statute does not state at what distance the tag must be "clearly legible," *i.e.*, capable of being read, the court agrees that if the tag was not clearly legible to a law enforcement officer following a safe distance behind the vehicle, the statute is violated.  It would be unreasonable to read the statute as meaning that a tag is "clearly legible" if it cannot be read by an officer following safely behind in his patrol car, given that the tag is issued for the purpose of enabling officers to identify vehicles registered under the provisions of the motor-vehicle registration laws.  Officers should not be required to stop vehicles in order to read their tags."

*United States v. Granados-Orozco*, 2003 WL 22213129, at *2 (D. Kan. Aug. 26, 2003).  Therefore, K.S.A. § 8-133 should not be construed as to frustrate this proper and common law enforcement practice and thereby cause either less license plate checks or more traffic stops that are inherently more intrusive to the public and increase the risk to officer safety.  *See United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir.)(Officer safety during a traffic stop is a "legitimate and weighty" concern), *cert. denied*, 126 S. Ct. 468 (2005).

In *Edgerton*, the panel cites *Hayes* in supports of its holding concerning the lawfulness of the initial stop and in an accompanying footnote to this citation observes, "[n]otably, the driver's detention subsequent to the initial stop was *not* an issue in that case."  438 F.3d at 1048 n.4.  For the balance of its discussion of K.S.A. § 8-133, the *Edgerton* decision makes no reference to *Hayes*. The majority in *DeGasso* rejected the dissent's attempt there to distinguish *Hayes* and similar holdings from other jurisdiction on a nearly identical basis:

> "The dissent objects that because these cases 'involved the legality of the stop itself rather than its duration,' they are 'of little help in construing the precise language of § 1113A.'  Diss. Op. 1155.  We do not understand the objection.  The question is whether the statutes apply to out-of-state vehicles; the precise procedural context in which the issue arises has no bearing. . . .  In each instance, the requirement that the license plate be plainly

visible is expressed broadly, without limitation to in-state vehicles, but the
surrounding statutory context contains provisions applicable only to vehicles
registered in state.  The language of the Kansas decision, quoted above,
makes it clear that the Kansas court considered and rejected essentially the
same argument Defendants make here."

369 F.3d at 1148 n.7.  Borrowing this template from *DeGasso*, it is not
understandable to overlook *Hayes*'s sound interpretation and application of K.S.A.
§ 8-133 based on its procedural context when this context does not and did not
bear on the state court's decision and rationale.

[4]Most noteworthy is K.S.A. § 8-1706(c) which provides in part:  "Either a
tail lamp or a separate lamp shall be so constructed and placed as to illuminate with
a white light the rear registration plate and render it clearly legible from a distance of
fifty (50) feet to the rear."  K.S.A. § 8-1455 defines "registration" to mean "the
registration certificate or certificates and registration plates issued under the laws of
this state pertaining to the registration of vehicles."  A temporary registration permit
falls within this definition in having been issued for the registration of vehicles.
Even if K.S.A. § 8-1455 refers to Kansas registrations, the reasoning from *State v.
Hayes* logically extends to K.S.A. 8-1706(c).  *Cf. United States v. DeGasso*, 369
F.3d at 1148; *United States v. Ramirez*, 86 Fed. Appx. 384, *386 (10th Cir. Jan.
22, 2004) (State of Utah "is competent to pass legislation dealing with window
tinting of vehicles operated within Utah" and "is not required by the Full Faith and
Credit Clause to apply the window tinting statute of Colorado in lieu of its own
statute.").  Thus, a temporary registration tag serving as the rear registration plate
must be illuminated so as to be "clearly legible" from a distance of fifty feet.  These
statutes are *in para materia* in addressing the "clear legibility" of rear registration
plates.  The district court in *Edgerton* did cite K.S.A. § 8-1706(c) as part of its
analysis:

The defendants alternatively attack the trooper's reasonable suspicion arguing
that the tag was "lawfully" displayed, that the tag was not obscured, and that
"something as subjective as the lighting conditions at a particular time" is not
enough.  (Dk.53, p. 4).  As noted before, K.S.A. 8-133 requires the license
plate to be clearly visible and clearly legible.  The statute does not limit these
requirements to daytime hours or make any exception or qualification to
these requirements for nighttime hours.  The defendants offer the court no
authorities or rationale for reading such exceptions into the statute.  That it

Colorado Supreme Court decision of *People v. Redinger*, 906 P.2d 81 (1995), as

persuasive authority for interpreting this Kansas statute.  In *Redinger,* the officer

conducted a nighttime traffic stop because he could "not see a license plate or

temporary sticker on the rear of Redinger's vehicle" and he "suspected a violation

of a state law requiring license plates to be 'clearly visible.'"  438 F.3d at 1050

(citing *Redinger*, 906 P.2d at 82 & n.1).[5]  The *Edgerton* opinion quotes the

_____

> was nighttime and that the defendant's license plate was not lighted are not
> subjective factors.  Nor have the defendants shown anything implausible or
> unreasonable in Trooper Dean's explanation of his inability to read the
> document that was posted in the rear window but not illuminated at night.  If
> anything, the testimony seems quite reasonable considering that Kansas law
> recognizes the need for illuminating license plates to make them visible and
> legible, as it requires a tail lamp or separate lamp to illuminate the rear license
> plate so that the plate is clearly legible from a distance of fifty feet.  K.S.A.
> 8-1706(c).  It also follows that the visibility and legibility of the temporary tag
> posted in the rear window would be obscured at night by the reflection
> created from the headlamps of a following car and by the lack of any
> separate lighting.

*United States v. Edgerton*, 2004 WL 2457806 at *3 (D. Kan. Oct. 14, 2004); *cf.*
*United States v. Dycus*, 151 Fed. Appx. 457, 460-61 (6th Cir. Oct. 25, 2005)
(Under Tennessee law, a registration plate to be clearly visible at all times must be
illuminated).  The panel in *Edgerton* did not discuss this analysis.

[5]The court's decision in *Redinger* summarized and quoted the officer's
testimony "that when he stopped Redinger's vehicle, he suspected a violation of
'the statute [which] requires that the vehicle registration be visible to the read [sic]
of the vehicle for at least 200 feet behind the vehicle, and be permanently attached
to the vehicle." 906 P.2d at 82 n.1.  The Colorado court then observed that no
Colorado provision requires visibility up to 200 feet but that § 42-4-206(3), 17
C.R.S. (1995 Supp.) "requires a rear registration plate to be properly illuminated so

conclusory finding[6] in *Redinger* that as the officer neared the stopped vehicle he

"'observed a valid temporary registration plate properly displayed in the rear

window on the driver's side thereof." 438 F.3d at 1050. The *Edgerton* opinion

offers that *Redinger* is "directly on point" and that there is "no reason to doubt that

the language of Kan Stat. Ann. § 8-133[7] has the same meaning as its Colorado

---

that it is clearly legible from a distance of 50 feet to the rear of a motor vehicle."
The Colorado court noted that the trial court had relied on § 42-3-123, 17 C.R.S.
(1995 Supp.) "which requires license plates to be 'clearly visible' and attached to
vehicles." The court followed up with a citation and quotation of the  provision
which it plainly considered to be the most specific and relevant there: "Rule 7, 1
C.C.R. 204-14 (1993) sets forth similar requirements as to temporary registration
permits, providing in part that such permits may be affixed to motor vehicles in the
lower left-hand corner of the rear windshield or in the place of a permanent
registration plate so long as the temporary permit is 'clearly visible.'" 906 P.2d at
82 n.1.

[6]The court labels this finding "conclusory" because the Colorado Supreme
Court's opinion offers no reasoning or explanation for its conclusion that a
temporary registration permit posted in the rear window without illumination is
"properly displayed." 906 P.2d at 82. In a footnote to this finding, the Colorado
Supreme Court quoted the different Colorado traffic provisions considered, but
that is all. 906 P.2d at 82 n.1; *see supra* note 5. There is no discussion anywhere
in the opinion that interprets those provisions, that explains the interaction of those
provisions, that identifies the provisions or terms therein which were controlling in
its decision, or that offers any rationale for its decision. Indeed, the only apparent
basis for its conclusion is the specific Colorado regulation that sets out the
requirements for temporary registration permits and that expressly authorizes such
permits to be posted in the rear windshield. *Id*.

[7]*See supra* notes 5 and 6. The court is unsure what terms, if any, are defined
or interpreted in the *Redinger* decision that bear on the application of K.S.A. § 8-
133.

counterpart."  438 F.3d at 1050.

The *Edgerton* opinion discounts any attempt to read Kansas law differently on the weight of the following:  "The Government cites to nothing in Kansas law forbidding the placement of a temporary registration tag in the rear window of a vehicle (or directing its placement in any particular place),[8] and we consider the Government's contrary interpretation of § 8-133 highly improbable[9]."

---

[8]The panel in *Edgerton* at footnote two quotes K.S.A. § 8-126a which provides in relevant part that whenever such terms as "license number plate" or "license tag" "or any other word, term, or phrase of similar import or meaning is used" in this act or in any other Kansas law relating to registration of motor vehicles then it "shall be construed to mean and include **any** plate, tag, token, marker or sign issued under the provisions of this act for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws of this state or otherwise carrying out the provisions of such laws."  438 F.3d at 1046 n.2. (emphasis added).  In short, K.S.A. § 8-126(a) plainly provides that the term, "license plate," includes temporary registration tag.  The panel in *Edgerton* agrees by holding that the phrase "[e]very license plate" in K.S.A. § 8-133 "apparently includes temporary permits."  *Id.*  What has been overlooked is that K.S.A. § 8-133, captioned as the "Display of license plate," opens with this sentence: "The license plate assigned to the vehicle shall be attached to the rear thereof and shall be so displayed during the current registration year or years . . . ."  Thus, K.S.A. § 8-133 does speak to the proper placement or display of temporary registration tags. More importantly, Kansas has no law like that in Colorado which expressly permits temporary registration tags to be posted in rear windows without any requirement for separate illumination.

[9]"[H]ighly improbable" here presumably refers to the likelihood of the government's interpretation being a reasonable and sensible interpretation that furthers the Kansas legislature's design and intent.  "Under the fundamental rule of statutory construction, the intent of the legislature governs when that intent can be ascertained from the statute."  "When a statute is plain and unambiguous, an

13

appellate court must give effect to the intention fo the legislature, rather than determine what the law should or should not be." *State v. McCurry*, 279 Kan. 118, 121,  105 P.3d 1247 (2005).  As established in the footnotes above, the plain and unambiguous terms of K.S.A. § 8-133 and K.S.A. § 8-1706 do not submit to any differentiation between temporary registration tags and permanent license plates. Kansas has no counterpart to the Colorado regulation quoted in *Redinger* that directly authorizes an owner to post a temporary registration tag in the rear window. Nor does Kansas have any provisions expressly exempting temporary tags from any of the general display requirements for license plates.  When a state has lacked a specific statute or regulation allowing temporary tags to be posted in a window or exempting temporary registrations from the general provisions governing the display of license plates, courts from other jurisdictions have enforced these general provisions on the display of the temporary tags. *See, e.g.*, *United States v. Foster*, 65 Fed. Appx. 41 (6th Cir. 2003) (Illinois temporary license tag posted in rear windshield violated Kentucky traffic code requiring license plates to be kept legible and illuminated); *Sands v. State*, 753 So. 2d 630, 631-32 (Fla. Dist. Ct. App. 2000) (Between the repeal of an administrative rule allowing a temporary tag to be posted in the rear view window and the subsequent enactment permitting temporary tags to be attached to the inside of the rear window, "a temporary tag had to be displayed in the same manner as a permanent license plate, to wit: illuminated at night, securely fastened in the spot for a permanent license plate, and visible from 100 feet" (citation omitted), *rev. denied*, 773 So. 2d 56 (Fla. Oct. 13, 2000), *cert. denied*, 531 U.S. 1178 (2001); *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005) (a license plate displayed in a rear window is not displayed upon the rear of the vehicle); *State v. Pritchett*, 1999 WL 33434990, at *1 (Mich Ct. App. Oct. 19, 1999); *cf. City of Wilmington v. Conner*, 144 Ohio App. 3d 735, 761 N.E.2d 663 (2001) ("make[s] little sense to find the illumination requirement inapplicable to temporary tags placed" on the rear of the vehicle).  The Sixth Circuit's reasoning in *Foster* points to the most logical inference to be drawn when a state does not have a provision separately addressing the display of temporary registrations:

> "Foster argues forcefully that he did, in fact, have a temporary tag taped inside his rear windshield that (sic) and no state statute or regulation specifically requires that temporary tags be illuminated at night.  According to the defendant, therefore, there was no probable cause for Johnson to

438 F.3d at 1050.  To secure the perceived reasonableness of its interpretation, the

Tenth Circuit factually distinguishes two cases and then holds up those distinctions

as constitutionally significant:

> Simply put, the tag was illegible not due to any material within Defendant's
> ability to control, but due to external conditions.  *Compare DeGasso*, 369
> F.3d at 1141 (noting the truck's rear license plate was "mounted too low"
> obscuring the lettering at the bottom of the plate); *People v. Altman*, 938
> P.2d 142, 143 (Colo. 1997) (noting the rear of the vehicle was covered with
> dirt obstructing the rear license plate).  Under the Government's
> interpretation of § 8-133, snow, rain, fog, glare, or even a officer's poor
> eyesight might render a temporary registration illegible and in violation of the
> statute.  Anyone driving under less than optimal viewing conditions in Kansas
> with an otherwise unremarkable temporary registration tag posted in the rear

---

> believe Foster was in violation of any traffic regulation.  However, the lack of
> a specific provision in the Kentucky code dealing with temporary license tags
> does not necessarily imply that they need not also be illuminated at night.
> More logically, the absence of a provision exempting temporary tags from
> the general applicability of K.R.S. § 186.170(1) supports the proposition that
> they are subject to the same illumination requirements as are permanent
> plates.

*United States v. Foster*, 65 Fed. Appx. at 44.

Is it not reasonable to infer that the State of Colorado in having a motor

vehicle regulation that permits temporary registration permits to be affixed to a rear

window has weighed the purposes behind the general license plate display

requirements and found those purposes outweighed, at least for the short term, by

the policies and conveniences served by allowing the rear window display of

temporary permits?  Is it not likewise reasonable to infer that the State of Kansas in

not having such a regulation has implicitly balanced these same competing policies

and considerations and reached an opposing conclusion?  Is it highly improbable

that the Kansas legislature intends for all license plates, temporary and permanent,

to be clearly visible and legible to an officer following at a safe distance during all

hours of a day under normal atmospheric conditions?

window would risk violating § 8-133.

　　　　We decline to require optimal viewing conditions before compliance with a statute requiring an otherwise unremarkable license plate to be "clearly visible" is assured.  Fourth Amendment reasonableness does not depend on external conditions, but on a reasonable suspicion that a driver has violated the law.

438 F.3d at 1050-51.

　　　　The Circuit's observation that the tag's lack of legibility was due to external conditions beyond the defendant's control is perhaps the most troubling and difficult aspect of this opinion to understand, interpret and apply.  Nighttime may be an external condition beyond a motor vehicle operator's control, but the operator does have control in placing or positioning a license plate where it is illuminated and, therefore, legible at night to an officer following in a patrol car. Nighttime can hardly be considered an unusual atmospheric condition not contemplated by the Kansas legislature with regards to K.S.A. § 8-133 or even by an owner of a typical motor vehicle which comes equipped with lamps to illuminate a properly placed rear license plate.  Nighttime may not qualify as "optimal viewing conditions," but is it unreasonable under the Fourth Amendment for an officer to enforce a state law that requires a license plate to be illuminated so as to be clearly legible at night from a safe following distance?

　　　　In consideration of the above and what more probably could be

16

written on this matter, the court is compelled to interpret and apply the *Edgerton*

decision strictly to the facts found controlling in the court's holding.  Namely, there

is no violation of K.S.A. § 8-133 when a temporary registration tag is posted in the

rear window and the "only reason" for it not being legible is the nighttime

conditions.  438 F.3d at 1050.  Even though it was significant to the Circuit that the

temporary registration tag here was issued by another state which expressly

permitted a temporary registration tag to be posted in the rear window without a

requirement for separate illumination, the Circuit appears to have read Colorado's

regulatory exception for temporary tags into K.S.A. § 8-133.  This court is required

to accept that reading as binding precedent notwithstanding the numerous points

made above.  The court, however, does construe the Tenth Circuit's discussion of

external conditions beyond the defendant's control as not an effort to interpret

Kansas law but rather as a general appeal for the perceived reasonableness of its

conclusion.  This narrow construction of that discussion comports with what the

court has said above on the Tenth Circuit's analysis and, more importantly, with

what the Tenth Circuit did not say about Kansas law when it referred to "external

conditions" and the defendant's "control."  Without more direction from the Tenth

Circuit, this court eschews any pretense of amending K.S.A. § 8-133 or any other

Kansas traffic law to accommodate this unreferenced discussion of "external

17

conditions" and "control."

## ANALYSIS AND CONCLUSION

The court's construction of *United States v. Edgerton* does not impact its prior holding on the defendant's motion to suppress. While the traffic stop here involved the enforcement of K.S.A. § 8-133 on a temporary tag issued by another state, the tag was not posted in the rear window and its lack of legibility was not due exclusively to nighttime conditions. Indeed, the traffic stop here involved a temporary tag affixed to the rear license plate area and obscured by a ball hitch. The illegible condition of the tag was not due to any external conditions recognized in *Edgerton*.

The defendant maintains the unreadable condition was due to conditions outside his control. He contends the temporary tag was a legally valid temporary tag issued by the State of Arizona. The tag was affixed in the proper location. There was a ball hitch in front of the tag, and Kansas law does not prohibit the installation of ball hitches. Sergeant Schneider testified that he normally can read license plates despite a ball hitch from the angle created by coming along the side of the truck. But in this case, he could not read the smaller numbers behind the ball hitch. The defendant concludes that the tag was illegible solely because of the the size of the numbers and that there was nothing he could do to

18

change this size as the tag was provided by the State of Arizona.[10]

The defendant's motion advocates a broad reading of *Edgerton's* discussion of "external conditions" beyond an operator's "ability to control."  The court rejects this broad reading for the reasons stated earlier.  Even assuming the propriety of construing *Edgerton* broadly, it does not sustain the defendant's position.  The record fails to establish that the tag was illegible due solely to an external condition outside the defendant's ability to control.  First, the temporary tag was obstructed not by an external condition but by a ball hitch.  A license plate is not clearly visible and legible if obscured by a ball hitch.  *See, e.g.*, *United States v. Unrau*, 2003 WL 21667166, at *2-*3 (D. Kan. Jun. 16, 2003) ("A tag is not positioned to be plainly visible when it is behind a ball hitch that blocks an officer from reading the entire plate while following at a reasonably safe distance."); *People v. Quezada*, 2002 WL 933697, at *2 (Cal. Ct. App. May 7, 2002) ("[T]he statute focuses on placement of the license plate:  It must be in a place from where it is clearly visible.  Thus, if a trailer hitch, or anything else, renders the license plate not

_____

[10]The defendant's citations to the transcript do not establish that the State of Arizona issued the temporary tag as it appeared on the defendant's pickup or that the size of the temporary tag was a matter outside of his control.  Sergeant Schneider's testimony in this regard comes across as supposition and as based on the lack of evidence to prove otherwise.

19

clearly visible, remedial action must be taken to make the plate clearly visible.");

*State v. Hill*, 131 N.M. 195, 203, 34 P.3d 139, 147 (N.M. App. 2001) (plate is not

clearly legible when trailer hitch obstructs parts of the plate from some viewing

angles); *State v. Smail*, 2000 WL 1468543 at *2 (Ohio Ct. App. Sept. 27, 2000)

(the middle numbers of a license plate are not in "plain view" if obstructed by a ball

hitch even though readable from the side of the vehicle); *State v. McCue*, 119

Wash. App. 1039, 2003 WL 22847338 at *3 (Wash. Ct. App. Dec. 2, 2003) (a

license plate is not plainly seen and readable if partially obscured by a trailer hitch

and only fully visible at certain angles).  Second, the presence of the ball hitch is

something within the defendant's ability to control just like a license plate bracket,

*see United States v. Mesina*, 2003 WL 21497050, at *5 (D. Kan. May 23, 2003);

*State v. Hayes*, 8 Kan. App. 2d at 533; a tinted plastic covering on a license plate,

*see United States v. Castro-Holguin*, 94 Fed. Appx. 788, 791, 2004 WL 789764

(10th Cir. 2004); *State v. Hinds*, 113 P.3d 835, 2005 WL 1501003 at *4 (Kan.

App. Nov. 1, 2005), *rev. denied*, 280 Kan. No. 2 (vii) (Nov. 1, 2005); a license

plate mounted too low so as to obscure the lower lettering, *see United States v.*

*DeGasso*, 369 F.3d at 1141; or dark window tinting, *see United States v. Poke*, 81

Fed. Appx. 712, 713-14, 2003 WL 22701661 (10th Cir. Nov. 17, 2003).  Third, the

evidence shows a violation despite the defendant's speculation that Sergeant

20

Schneider would have been able to read the larger numbers on a permanent plate after moving his patrol car along side his pickup.  A license plate is not legible if the entire plate is not readable from a safe following distance whether or not it may be readable from a particular angle.  The video recording confirms the testimony of Sergeant Schneider that the ball hitch on the truck blocked several numbers on the Arizona temporary tag.  Sergeant Schneider had reasonable suspicion to conduct this traffic stop based on the violation of K.S.A. § 8-133.

IT IS THEREFORE ORDERED that the defendant's motion to reconsider (Dk. 34) is granted to the extent that the court has reconsidered its ruling and is denied as to all other relief requested therein.

Dated this 17th day of April, 2006, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge