IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                      No.  05-40081-01-SAC

JUAN CARLOS RUBIO-SANCHEZ,

           Defendant.

MEMORANDUM AND ORDER

The defendant Juan Carlos Rubio-Sanchez pleaded guilty to count one of the indictment that charged him with possession with the intent to distribute methamphetamine.  The factual basis to this plea is that the defendant was driving a Chevrolet pickup on I-70 highway when he was pulled over for a traffic violation.  The defendant presented a Mexican driver's license indicating he was Daniel Osuna-Castro.  During a consensual search, the drug-detection canine alerted to the presence of narcotics.  At the sheriff's department, officers discovered four packages of methamphetamine and four packages of heroin concealed in the bottom half of the pickup's radiator.  The laboratory analysis of the controlled substances revealed that the four packages of methamphetamine had a purity level of 76% yielding 1,285 grams of actual methamphetamine and that the

four packages of heroin had a net weight of 960 grams and a purity level of 72%.

The presentence report ("PSR") recommends a Guideline sentencing range of 108 to 135 months from a criminal history category of one and a total offense level of 31 (base offense level of 36 pursuant to U.S.S.G. § 2D1.1(c)(2) less a two-level reduction for meeting the safety valve criteria pursuant to U.S.S.G. § 2D1.1(b)(9) and a three-level reduction for acceptance of responsibility adjustment pursuant to U.S.S.G. § 3E1.1).  The addendum to the PSR reflects the defendant has one unresolved objection to the lack of a minor role adjustment, and the government opposes a role adjustment.  The defendant has filed a sentencing memoranda in support of his objection, and the government has filed an opposing response.

**Defendant's Objection:**  The defendant objects that the PSR fails to recommend a minor role adjustment and argues that his limited role and brief involvement in the distribution of the controlled substances qualify him for this adjustment.  The defendant emphasizes that his role was only to drive the load vehicle and that his involvement began with a phone call on May 29th from a man known only to the defendant as "Pulga" during which he was offered $3,000 to come to Phoenix, Arizona and to drive back to Kansas City a pickup loaded with drugs.

The defendant and his passenger, Diana Alarcon-Cerda, then left for

2

Phoenix and arrived there the next morning. The defendant went into a restaurant and returned with keys to a pickup parked in the restaurant. The traffic stop occurred on May 31, 2005, during their return trip to Kansas City. During the stop, the defendant told the officer that he owned the pickup but as proof of ownership he could produce only a three-day temporary permit issued by the State of Arizona to a person named, Leticia Garcia. The passenger, Diana Alarco-Cerda, identified Ms. Garcia as her friend.

In support of his objection, the defendant points to his limited knowledge of this venture to distribute the controlled substances. He knew only the first name of his contact person. He did not know the structure or scope of the conspiracy and had no control over and did not know the particular purity or quantity of drugs found in the vehicle. He was not privy to the details on how the drugs were to be distributed.

The defendant emphasizes his limited and brief involvement as a simple courier. He was paid a flat fee and had no other arrangement to profit from the eventual sale of the drugs. He did not help with planning the key aspects for distributing the drugs. He did not obtain the temporary permit for the truck. He did not assist in secreting the drugs inside the radiator. He did not arrange, negotiate, or purchase the drugs, nor did he finance the transaction. He is an illegal

3

alien who had entered the United States only months before the transaction and who had little money or assets at the time of his arrest. The defendant has no criminal history.

The government opposes the adjustment by noting first that Tenth Circuit precedent has recognized the importance of couriers to a drug-dealing network. The government asserts the defendant has not carried his burden of proving he is less culpable than the average drug courier. The government goes so far as to argue that "[t]o accept the defendant's argument that he played a minor role in the offense of conviction would be akin to proclaiming that nearly every drug courier plays a minor role as compared to the source and destination of the drugs." (Dk. 47, p. 4) The government highlights that the defendant knew the supplier by name, had the supplier's name in his cell phone, was paid to transport the drugs, used a false identification, and intended to transport a large quantity of drugs of high purity a long distance.

**Ruling**: The court recently addressed the minor role objection in the drug courier context and summarized the relevant and controlling case law in these terms:

> The mitigating role adjustment in U.S.S.G. § 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."

U.S.S.G. § 3B1.2, comment. (n.3(A)).  The determination whether a defendant is entitled to such a reduction is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (n.3(C)).  A role reduction is not earned simply because a defendant is "the least culpable among several participants in a jointly undertaken criminal enterprise." *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994) (citing *United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991)).  In evaluating culpability, a court compares the "defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime."  *United States v. Caruth*, 930 F.2d at 815.  To weigh relative culpability, "evidence must exist of other participants and their role in the criminal activity."  *United States v. Sukiz-Grado*, 22 F.3d 1006, 1009 (10th Cir. 1994) (internal quotation marks omitted).  In short, a role reduction is appropriate when the defendant is "substantially less culpable" than an average participant and is not required just because multiple participants with differing levels of culpability are involved.  The defendant has the burden of proving his minor participation.  *United States v. Harfst*, 168 F.3d 398, 401-02 (10th Cir. 1999).

The Tenth Circuit has eschewed adopting any *per se* rule that drug couriers are entitled to minor role reductions.  *United States v. Chavez*, 229 F.3d 946, 956 (10th Cir. 2000); *United States v. Torrez*, 2004 WL 1510011, at *1 (10th Cir. 2004); *see, e.g.*, *United States v. Montoya*, 24 F.3d 1248, 1249 (10th Cir. 1994) ("Given the important function of couriers in drug distribution networks, we have recognized that couriers often are not minor participants."); *United States v. Sukiz-Grado*, 22 F.3d at 1009; *United States v. Ballard*, 16 F.3d 1110, 115 (10th Cir.), *cert. denied*, 512 U.S. 1244 (1994).  By the same token, the Tenth Circuit has not said that a drug "courier is ineligible for" a role reduction.  *United States v. Harfst*, 168 F.3d at 403.  For that matter, the Sentencing Guidelines do not preclude a minor role reduction to a defendant whose only role in the offense was "transporting or storing drugs" when the defendant is held accountable only for the quantity of drugs personally transported.  U.S.S.G. § 3B1.1, comment. (n.3(A)).

One is not disqualified from nor qualified for a role reduction just by calling oneself a drug courier.  Tenth Circuit precedent looks beyond the label and focuses on certain factors and the facts as relevant to this determination:  (1) the "defendant's knowledge or lack thereof concerning

the scope and structure of the enterprise and of the activities of others involved in the offense," *United States v. Calderon-Porras*, 911 F.2d 421, 423 (10th Cir. 1990) (inquiry must focus on this factor); (2) the defendant's involvement in more than one transaction, *United States v. Montoya*, 24 F.3d at 1249; (3) the distance traveled by the courier and amount of compensation, *United States v. Mares*, —F.3d—, 2006 WL 752017, at *6 (10th Cir. Mar. 24, 2006); (4) the quantity of drugs entrusted to the defendant for transportation, *United States v. Parra-Garcia*, 1 Fed. Appx. 778, *783-784, 2001 WL 10291, *5 (10th Cir. 2001); (5) the fact that the defendant was specifically hired to transport or "duped into delivering" the contraband; *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir.), *cert. denied*, 543 U.S. 859 (2004); (6) the level of planning required to transport the drugs, *see id.*; and (7) the defendant's involvement in regards to "underlying scheme" in comparison to the defendant's involvement in the offense of conviction, *see United States v. Harfst*, 168 F.3d at 403.

*United States v. Vargas-Islas*, ___ F. Supp. 2d ___, 2006 WL 1889940 at *1-*2 (D. Kan. Jun. 5, 2006).

The court finds that the defendant has carried his burden of proving he is substantially less culpable than others involved in the same enterprise.[1] There is no question that couriers are generally important to a drug distribution scheme. But as stated above, the courts also have recognized that couriers may be less culpable than others involved in a particular distribution scheme.[2] The defendant

---

[1] In focusing on whether the defendant is less culpable than the average courier, the government tacitly concedes the defendant has carried his burden of proving he is substantially less culpable than others apparently involved in this drug transaction.

[2] For that matter, the commentary to the Sentencing Guidelines, as amended in 2001, contemplates the possibility of a role reduction for drug couriers who only

here does not appear to have been involved in the planning, arranging, negotiating, purchasing, financing, packaging, handling, hiding, or selling of the drugs. His knowledge of the structure or scope of the conspiracy was limited to his role and the first name and telephone number of his contact. He appears to have had no investment in the scheme nor arrangement to profit from the ultimate distribution. There is nothing in his criminal history or personal background to indicate that the defendant possessed any particular knowledge, experience, or contacts as to make his participation uniquely important to the venture's success. The defendant's role was only to make a single trip with the load vehicle, and he was kept in the dark as to all other details. The court finds that the defendant is substantially less culpable than the others involved in this same venture who were knowledgeable of and responsible for so many of the functions vital to the conspiracy's success.

      The court finds that the defendant also has carried his burden of proving he is substantially less culpable than the average courier in a drug distribution scheme. The analysis here does not turn on the general importance of drug couriers but on whether the defendant's involvement was typical of other

---

transport drugs. "For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline." U.S.S.G. § 3B1.2, comment. (n.3(A)).

couriers actively participating in a drug distribution scheme.[3]  Applying the factors outlined above, the court finds that the defendant has carried his burden here. First, the defendant knew only what was needed in order to transport the drugs. There is nothing to indicate he knew anything more about the scope or structure of the drug distribution scheme.  Such minimal knowledge is consistent with less culpability.  Second, the evidence suggests the defendant had been in the United States a matter of months and his involvement in this scheme was brief.  This factor mitigates the defendant's culpability.  Third, the planned travel distance and compensation are somewhat typical of drug couriers prosecuted in this district. Fourth, the quantity of drugs transported here was large and the purity of the drugs was high, and such factors generally sustain an inference of a higher level of trust and involvement of the courier.  The weight of that inference here is tempered here by the facts that the defendant here did not handle, hide, or have immediate access to the drugs which were secreted in the radiator of the vehicle.  Indeed, there is no evidence that the defendant knew or should have known the quantity, quality or

---

[3]In the government's estimation, the defendant's involvement meets the threshold of "nearly every drug courier," in that the defendant was paid, knew the supplier, and was transporting a large quantity and high purity of drugs a long distance.  If the composite of the average drug courier consisted of just these bare elements, then it would be true that almost no drug courier convicted in federal court would be entitled to a minor role reduction, except for the courier's friends who just go along for the ride.

monetary value of the drugs he was transporting.[4] All of this weakens the inference that the more knowledgeable and involved parties in this conspiracy placed the same level of trust in the defendant that similar parties in another conspiracy would have placed in a courier who was transporting similar kinds and amounts of drugs but who knew what he was transporting and had access to them. Five, the defendant here was specifically hired to transport drugs. Six, the defendant was not involved in planning the transportation of the drugs. He was handed the keys and told where to drive a vehicle that had been arranged and loaded before his arrival. Finally, the evidence in this case, as well as the defendant's criminal history and personal background,[5] tends to show the defendant had no other involvement in the underlying scheme to distribute drugs than this single trip.

        Granting a role reduction on the facts here would not be contrary to

---

[4] When the quantity-driven Guidelines overstate the culpability of a drug courier who had no control or knowledge of the quantity or purity of drugs, the application of a minor role adjustment in appropriate circumstances may well serve to sharpen the reasonableness of a sentence under the Guidelines.

[5] The government asserts significance in the defendant's use of a false identification, but this argument is unconvincing because the defendant had no prior criminal history to hide, drug-related or not, and the defendant's possession of a false identification is entirely consistent with his illegal presence in this country.

recent precedent. *See, e.g.*, *United States v. Mares*, 441 F.3d 1152 (10th Cir. 2006) (affirmed denial of minor role adjustment as defendant courier had made multiple trips, possessed fraudulent bill of sale for the load vehicle, traveled a long distance, brought children along as cover, and engaged in more planning than the typical courier); *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277-78 (10th Cir. 2004) (affirmed denial of minor role adjustment to defendant courier who traveled to obtain a false driver's license from another state, who bought and insured the courier car, and who drove back to the source state and recruited his elderly uncle as cover); *United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000) (affirmed denial of minor role adjustment as the defendant was not only a courier but controlled the transfer of money, served as a contact person, and was the only confirmed recipient of drugs); *United States v. Shayestah*, 203 F.3d 836, 2000 WL 121498 (10th Cir. 2000) (Table) (affirmed denial of minor role adjustment as no evidence proving involvement of others and the defendant courier's fingerprints were on the drug packaging material); *United States v. Vargas-Islas*, ___ F. Supp. 2d ___, 2006 WL 1889940 at *1-*2 (D. Kan. Jun. 5, 2006) (granted a minor role adjustment as defendant courier drove one load with a large quantity of drugs, paid a flat amount, did not own the drugs or the load car, "did not know the quality or quantity of the drugs being transported, did not package or load the drugs into the

car, and did not arrange, negotiate, finance or plan the trip or any subsequent distribution."); *United States v. Alcarez-Arellano*, 2004 WL 1504059 (D. Kan. 2004) (denied minor role adjustment as the defendant courier planned and arranged the trip including the hiring of a person to accompany him and the purchase of the load car and he knew who had financed the purchase of the drugs), *aff'd*, 441 F.3d 1252 (10th Cir. 2006); *see United States v. Santos*, 357 F.3d 136, 142-43 (1st Cir. 2004 (affirmed the denial of a minimal role adjustment and the grant of a minor role reduction in a case involving a large quantity of drugs in that the defendant courier was paid a flat fee, was not involved in negotiations, and was unable to open the vehicle's secret compartment).

The court finds that the defendant has carried his burden of proving he is entitled to a minor role reduction of two levels. The court sustains the defendant's objection and grants a two-level adjustment for minor role. The ruling results in a total offense level of 26 (a base offense level of 36 less a three-level reduction pursuant to U.S.S.G. § 2D1.1(a)(3)(B)(ii), less a two-level reduction for meeting the safety valve criteria pursuant to U.S.S.G. § 2D1.1(b)(9), less a two-level reduction for minor role pursuant to U.S.S.G. § 3B1.2(b), and a three-level reduction for acceptance of responsibility adjustment pursuant to U.S.S.G. § 3E1.1) and a sentencing guideline range of 63 to 78 months.

IT IS THEREFORE ORDERED that the defendant's objection to the PSR is granted.

Dated this 25th day of July, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge